# ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X



RECEIVED
SEP 20 2012
PRO SE OFFICE

JEROME WINKLER

              Plaintiff,

    against

HERSHEY FRIEDMAN, AGRI-STAR MEAT
& POULTRY LLC, SHF INDUSTRIES

            Defendants,
----------------------------------------------------X

Docket No. 12 CV-3893 (JG) (LB)

**FIRST AMENDED COMPLAINT**
(Trail by Jury Demand)

Plaintiff acting Pro Se, complaining of the Defendants herein, respectfully shows the court and alleges;

## PARTIES

1.    Plaintiff is an individual United States citizen residing in the State of New York, County of Kings.

2.    Defendant Hershey Friedman is the CEO of Agri-Star Meat & Poultry LLC and is a resident of Montreal, Canada. Upon information and belief Defendant Hershey Friedman is a citizen of Canada.

3.    Agri-Star Meat & Poultry LLC is a corporation organized and existing under and by virtue of the laws of the State of Iowa, with its principal place of business in Postville,

Iowa.

5. SHF Industries upon information and belief is a corporation organized and existing under and by virtue of the laws of the State of Iowa. This corporation is related to Agri-Star by having the same principal officers and shareholders.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to the provisions of 28 USC 1332 (a) in that this is a controversy between citizens of different states and between citizens of foreign states and the amount of the controversy is greater than $75,000 exclusive of interest. The Court also has pendent jurisdiction over one cause of action herein.

7. Venue is proper in the Eastern District as the Defendant Agri-Star Meat & Poultry transacts business within the Eastern District and Plaintiff is found within the Eastern District.

## AS AND FOR A FIRST CAUSE OF ACTION

8. In or about October 2010, Plaintiff and Daniel Hirsch, acting in his capacity as President of Agri Star, Defendants Friedman, as CEO of Agri Star and Agri Star Meat & Poultry (hereinafter "AGRI-STAR") entered into a multi part agreement as follows:

a) AGRI-STAR agrees to hire Plaintiff as a consultant to their business for a period of six months and to pay all travel related expenses done for the benefit of the company and officers.

b) AGRI-STAR desires to enhance the profitability of the sales division and agree to

pay Plaintiff a sliding scale of between 1 1/2 % - 3% of gross sales made to "NEW" bonafide customers for a period of THREE YEARS.

c) AGRI-STAR desires to enter into the export market to sell items that from time to time were surplus in the USA market. Plaintiff through his extensive contacts and previous experience agreed to procure approvals and customers for the products produced in Postville, Iowa at the AGRI-STAR plant.

d) Plaintiff through his extensive experience and unique methods in maximizing the utilization of animal product, byproducts, and feed-stocks, along with specialized expertise in export regulation and documentation, logistics, market trends, and quality control, agreed that programs would be set in place to utilize all the permissible animal products that were being treated as waste, and after USDA FSIS approval use those products for either edible or pharmaceutical purposes. Plaintiff agreed to institute those programs for a 25% net revenue realization of those waste products.

9. It was further agreed that all necessary steps required to obtain the various international approvals needed for export, would be done cooperatively and expeditiously with all costs borne by AGRI-STAR.

10. a) Defendant Friedman and Daniel Hirsch acting in their capacity as officers and principal owners of AGRI-STAR agreed to give Plaintiff a "MANDATE" to institute all and any necessary changes and efficiencies to help make the company maximize its potential.

b) Sometime in the spring of 2011, Defendant Friedman and Daniel Hirsch, unilaterally, wrongfully and in breach of their agreement, made a decision not to allow Plaintiff to perform the necessary changes required under the "MANDATE". The

constant battles and atmosphere in which the Plaintiff was forced to perform even the most basic duties under the agreement, frustrated Plaintiffs ability to perform, evidenced Defendants bad faith, and caused an extremely high level of stress which led to certain health related issues for the Plaintiff.

    c) Daniel Hirsch, acting in his capacity as President, deceitfully claimed at that time that Plaintiff did not understand the word "MANDATE". This however was done only after many programs were put in place (see: Third cause of Action ) with Plaintiff operating under the same "MANDATE" to which the company realized at a minimum over $600,000 in annual revenue, solely as a result of Plaintiffs actions under the MANDATE.

11. On or about January 2011, Plaintiff solicited and set up an account for sales of product relying on the above referenced commission schedule. AGRI-STAR commenced selling to that account and continues to sell that account, but has refused to provide a proper accounting and to pay the agreed upon commissions. The amount due and owed to the Plaintiff at the present is $90,000.00. Additional sums of $200,000.00 or such greater amount are due, which shall be discovered at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

12. On July 7, 2011 Plaintiff arranged for a meeting with The Chief of Dept. USDA AMS, Food Commodity Purchase program. Plaintiff was attempting to maximize the revenue to the company and to facilitate approval to participate in the program. Plaintiff has extensive hands on knowledge of that program, and the ability to participate was confirmed at that meeting at which President Hirsch of Agri-Star was in attendance.

13. President Hirsch of Agri-Star along with other members of senior management within AGRI-STAR (John Does) conspired individually and collectively to deprive Plaintiff of his contractual rights under the agreement, so that they may individually profit by circumventing Plaintiff's rights and depriving Plaintiff of the sums owed.

14. That as a result of this conspiracy Plaintiff has lost the profit of his contract in the amount of $600,000 or such greater amount as proof at trial may show.

## AS AND FOR A THIRD CAUSE OF ACTION

15. Plaintiff upon inspection of the facility of AGRI-STAR, and processes used, determined that a large quantity of usable, edible and inedible material is going to waste. The waste material as classified "RENDERING" brought zero revenue to AGRI-STAR. Plaintiff used his knowledge and in direct reliance of the agreements with Hirsch and Friedman, instituted a program along with the USDA Veterinary Supervisor in Charge. Said program included, but is not limited to, the saving for edible purposes Beef Feet, Beef Kidneys, Beef Tripe, Beef Tongue, Beef Head Meat.

16. President Hirsch and AGRI-STAR along with other unknown persons in senior management conspired to make instituting those programs nearly impossible. Despite the roadblocks placed to prevent Plaintiff from accomplishing the efficiencies under the agreement. Plaintiff, with perseverance and assistance from line personnel, instituted these programs, which continue through today. AGRI-STAR has refused to compensate the Plaintiff for instituting those programs.

17. Under the terms of the agreements reached in October 2010, the Plaintiff is

entitled to be remunerated for the sum of a minimum of $450,000 or such greater sum as shall be proven at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION

18. Plaintiff relying on the agreement between himself and President Hirsch and AGRI-STAR went about to procure "NEW" bonafide customers to purchase product. Plaintiff did so at his own expense and used his own time, not being remunerated by AGRI-STAR. In fact, Plaintiff did find at least three customers ready, willing and able to buy product from AGRI-STAR on a regular basis.

19. President Hirsch and AGRI-STAR conspired along with their sales team of Steve Harliss, John Doyle and unnamed John Does in their sales dept. to provide prices to Plaintiff to quote to potential customers that had no basis in reality. Not only were the prices offered higher than the industry standard (USDA/Yellow Sheet) prices but in fact were in many instances >5% higher than the actual prices that AGRI-STAR sold their product to others. This was a deliberate attempt by the Defendants to deprive Plaintiff from earning agreed upon sales commissions. AGRI-STAR and persons within their sales dept. went on to procure and sell directly to those customers after those customers provided to AGRI-STAR the necessary credit information.

20. When Plaintiff asked AGRI-STAR to quote prices on a delivered CIF basis, they maintained that the cost of freight would be $0.10-$0.12 per lb. In reality, the actual cost of delivery was between $0.06-$0.08 per lb. Defendant AGRI-STAR uses primarily a related "TRUCKING" company with communal ownership. The arbitrary and capricious setting of freight rates frustrated the agreement and directly caused Plaintiff to

lose many opportunities to earn sales commissions, as those customers saw those inflated costs as an attempt to "Pad the Bill".

21. That as a result of this conspiracy Plaintiff was denied the opportunity to earn sums in the amount of at least $65,000 annually, or such greater amount as proof at trial may show, in which sum he has been harmed.

**Wherefore** Plaintiff Demands a Judgment:

a. On the First cause of action against Defendants Friedman and AGRI-STAR in the amount of $3,000,000.00 or such greater amount as proofs may show;

b. On the Second, Third and Fourth cause of action against AGRI-STAR in the amount of $3,000,000.00 or such greater amount as proofs may show;

c. Together with interest, costs, disbursements and such other and further relief as to the Court deems appropriate.

Dated: September 20, 2012

Jerome Winkler
3711 Lyme Ave.
Brooklyn, New York 11224
718-372-5718